UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CALVIN AYRE,                                                          CASE NO.:

                    Plaintiff,

vs.

PIONEER TABLE INC. and DOES 1-9,

                    Defendants.
_____/

## COMPLAINT

Plaintiff, Calvin Ayre ("Mr. Ayre" or "Plaintiff"), sues Defendants, Pioneer Table Inc. and Does 1 through 9 (collectively, "Defendants"), and alleges:

### NATURE OF THE ACTION

1.     This is an action for injunctive relief and damages arising out of Defendants' malicious and unlawful actions, including upon information and belief, defamation and conspiracy. Defendants, whose identity is presently unknown, and who have engaged in an intentional scheme to conceal their identity, are believed to have promoted the publication of false statements regarding Plaintiff. Once such statements were originally published, the Defendants then caused purported news reporting websites to "report" on the original publication, even after the author of the original publication had withdrawn the false and defamatory statements. In at least one instance, the Defendants' reporting website "reported" on the original publication after it had already been corrected. Moreover, the Defendants have utilized various services to conceal the registrants of the domain names being used to re-publish and perpetuate the false and defamatory statements. Plaintiff believes that Defendants have engaged in such conduct in an

organized and coordinated fashion in order to cause harm to Plaintiff's personal and professional reputation.

## THE PARTIES, JURISDICTION, AND VENUE

2. Plaintiff is a citizen of Canada and Antigua who currently resides in Antigua and Barbuda.

3. Defendant, Pioneer Table Inc., claims to be an online news reporting publication based in Framingham, Massachusetts. However, Pioneer Table Inc. is not registered to do business in Massachusetts, and it is presently unknown whether Pioneer Table Inc. exists as a legitimate business entity.

4. Upon information and belief, Does 1 through 9 are the individuals or entities responsible for commissioning the creation, publication, and republication of the false and defamatory statements at issue in this action.

5. Defendants' true names and capacity, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiff. Upon information and belief, one or more of the Defendants are citizens of the United States. For instance, the website republishing the false and defamatory statements claims to be a company with an address in Framingham, Massachusetts. Similarly, the domain name being utilized to republish the false and defamatory statements was registered through GoDaddy in Arizona, and the registrant of the PioneerTable.com domain name is using Domains By Proxy, an Arizona-based domain name privacy service, to conceal his, hers or its true identity. Defendants are now also utilizing web-hosting services from Google, LLC to publish the website containing false and defamatory statements. Upon information and belief, one or more Defendants also arranged for a blogger located in this District to create the publication that served as the basis for what Defendants ultimately published and republished.

6. Once Plaintiff discovers the true names of, capacity, and activities attributable to each of the Defendants, Plaintiff will amend this Complaint to include such detail. Upon information and belief, Defendants are legally responsible for the events and happenings referred to herein, and that Plaintiff's injuries and damages were proximately caused by Defendants.

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because, upon information and belief, there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy, exclusive of interest and costs, exceeds $75,000, USD.

8. This Court has personal jurisdiction over Defendants pursuant to pursuant to Fla. Stat. §48.193(1)(a)(2) because, upon information and belief, they have committed tortious acts within Florida.

9. Upon information and belief, venue is proper in this District pursuant to 28 U.S.C. §1391.

**FACTUAL BACKGROUND**

10. Plaintiff is a successful entrepreneur and businessman, who has launched numerous successful and reputable companies.

11. Plaintiff is highly respected throughout the world, including in Antigua and Barbuda where he currently resides, as both a businessman and philanthropist. Antigua and Barbuda have recognized Plaintiff's experience and business acumen, naming him a Special Economic Envoy for Antigua and Barbuda and regularly seeking his advice on financial matters and blockchain technology.

12. Commencing in early January 2023, and continuing through the present, Plaintiff has been the victim of a vicious cyber-defamation campaign.

13. Upon information and belief, Defendants set out to intentionally defame and damage Plaintiff's reputation. To that end, upon information and belief, Defendants commissioned the publication of a blog entry containing false and defamatory statements regarding Plaintiff and suggesting the existence of a false association between Plaintiff and another individual when no such association or relationship exists.

14. Upon information and belief, at some point prior to January 9, 2023, Defendants contacted Kenneth Rijock. Mr. Rijock is an individual believed to be located in Miami, Florida who describes himself as a "[b]anking lawyer turned-career-money launderer (10 years), turned-compliance officer specializing in Enhanced Due Diligence, and Financial Crime Consultant." Mr. Rijock publishes a blog, rijock.blogspot.com, entitled "Kenneth Rijock's Financial Crime Blog" (the "Rijock Blog"). Upon information and belief, Defendants commissioned Mr. Rijock to include Plaintiff's name in an entry in the Rijock Blog.

15. On or about January 9, 2023, Mr. Rijock published a blog entry entitled "RAISE COUNTRY RISK ON ANTIGUA & BARBUDA DUE TO MASSIVE CORRUPTION INVOLVING INDIA'S MOST WANTED FUGITIVE MEHUL CHOKSI AND FRAUDSTER [PLAINTIFF]" (the "False Blog Entry").

16. The False Blog Entry contained numerous false statements regarding Plaintiff. For example, the False Blog Entry referred to Plaintiff as a "fugitive from justice" and as a "career fraudster wanted in North America." The False Blog Entry also asserts that Plaintiff is "allegedly contributing to the culture of bribery that allows donors to escape international justice indefinitely, so long as the illicit payments continue[] to be made."

17. The False Blog Entry concluded with the statement that "[w]e shall be detailing which government officials have been receiving this illegal compensation, and what they did for those bribes…."

18. On January 10, 2023, one of Plaintiff's representatives alerted Mr. Rijock of the defamatory nature of the statements regarding Plaintiff in the False Blog Entry. Acknowledging that he did not have any factual basis for the statements regarding Plaintiff, Mr. Rijock promptly revised the False Blog Entry to eliminate all references to Plaintiff.

19. However, upon information and belief, the roughly 24 hours that the False Blog Post referred to Plaintiff was sufficient to serve Defendants' purposes. On January 10, 2023, PioneerTable.com, a purported online news publication based in Framingham, Massachusetts, published an article entitled "*Investigator Kenneth Rijock Reveals Mehul Choksi, [Plaintiff's] Involvement in Bribing Antigua Police*" (the "Pioneer Table Article"). The Pioneer Table Article references the False Blog Entry, and repeats a number of the same false statements contained therein. However, the Pioneer Table Article also includes additional false and defamatory statements, including baseless statement that "[t]here is no secret that [Plaintiff] and Mehul Choksi are friends," that "[t]he two have been seen together around the island," and that they are "notorious white-collar criminals and fraudsters who have been involved in a string of financial scams and schemes." The Pioneer Table Article also falsely suggests that the False Blog Post "described the methods by which [Plaintiff] and Mehul Choksi have been able to gain access to the police force through bribing as well as by offering other favours to officers in order to gain their loyalty in order to carry out their criminal activities." Finally, the Pioneer Table Article indicates that Plaintiff "is involved in several fraud charges related to the operation of his

business," and that "the two fraudsters have been together involved in illegal activities in Antigua and Barbuda."

20. Upon information and belief, Defendants caused another false and defamatory article to appear. A few days after Mr. Rijock eliminated all reference to Plaintiff in the False Blog Entry, another purported on-line news reporting site based in Trinidad and Tobago, Writeups 24, published an article attributed to Jacob Smith entitled "*Kenneth Rijock uncovers shocking details on Mehul Choksi's bribery, conspiracy in Antigua*" (the "Smith Article"). Like the Pioneer Table article, the Smith Article repeated the same sort of false and defamatory statements that appeared in the Pioneer Table Article, and attributed the source of the false statements to the False Blog Post, even though Mr. Rijock had already eliminated all reference to Plaintiff in the False Blog Post days prior to the publication of the Smith Article.

21. The statements regarding Plaintiff that appeared in the False Blog Entry, the Pioneer Table Article, and the Smith Article are false.

22. Upon information and belief, these false and defamatory statements were made with the intent to injure Plaintiff by damaging his personal and professional reputation and were made with knowledge that the statements were false or in reckless disregard of whether or not they were false.

23. Moreover, it is apparent Defendants conspired to tarnish Plaintiff's reputation, as the timing of the publication of the False Blog Post, the Pioneer Table Article and the Smith Article suggests that Defendants' actions were coordinated and part of a concerted and calculated effort to cause harm to Plaintiff.

24. Plaintiff notified Writeups24.com, the publisher of the Smith Article, about the false and defamatory statements appearing in the Smith Article. Writeups24.com, after conducting

"thorough research into the matter," concluded that Plaintiff "was not involved and has nothing to do with" any of the matters referenced in the Smith Article. As a result of Writeups24.com's investigation, it has now removed all references to Plaintiff in the Smith Article, acknowledging that there was no factual basis for the allegations directed to Plaintiff in the Smith Article.

25. Plaintiff attempted to contact the person(s) responsible for the Pioneer Table website, and notified them that the statements appearing in the article at issue are false and defamatory. Plaintiff requested that Defendants remove the defamatory statements from their website. To date, Plaintiff has either received no response or received bounce-backs indicating that the e-mail addresses that Pioneer Table listed on its website are bogus.

26. Plaintiff also attempted to identify the person(s) and/or entity(ies) responsible for the PioneerTable.com domain name. The PioneerTable.com domain name is registered in such a way to conceal the true identity of the registrant of the domain name.

27. At the time of the publication of the Pioneer Table Article, the PioneerTable.com website was published by Hostinger, a web-hosting provider based in Lithuania. Plaintiff notified Hostinger of the defamatory nature of the statements published in the Pioneer Table Article. After receiving notice from Plaintiff, Hostinger discontinued providing web hosting services to PioneerTable.com. However, the Defendants quickly relocated the PioneerTable.com website, and it now appears to be hosted by Google LLC.

## COUNT I
*Defamation*

28. Plaintiff restates the allegations in Paragraph 1 through 27 above as if fully set forth herein.

29. Commencing in or about early January 2023 and continuing through the present, Defendants have undertaken a course of conduct calculated to damage Plaintiff's personal and professional reputation.

30. Specifically, Defendants published false and defamatory statements regarding Plaintiff.

31. The statements that Defendants published concerning Plaintiff are false and were false when made.

32. Such statements were made negligently, maliciously, with the wrongful and willful intent of injuring Plaintiff's personal and professional reputation, and with the knowledge that the statements were false or in reckless disregard of whether or not they were false.

33. The published statements were made of and concerning Plaintiff and were so understood by those who read Defendants' publication of them.

34. Defendants knew or should have known that the statements were injurious to Plaintiff's personal and professional reputation.

35. The statements are defamatory per se because they expressly or impliedly impute to Plaintiff corruption, fraud, deceit, and the commission of criminal offenses.

36. Defendants' defamation of Plaintiff have caused, and unless enjoined will continue to cause, Plaintiff to suffer irreparable harm for which he has no adequate remedy at law.

37. As a direct and proximate result of these false statements, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, serious injury to his reputation, both personal and professional.

## COUNT II
*Conspiracy*

38. Plaintiff restates the allegations set forth in Paragraph 1 through 27 as if fully set forth herein.

39. Upon information and belief, Defendants had a common purpose and goal of unlawfully publishing, promoting, and distributing false and defamatory statements of and concerning Plaintiff.

40. In furtherance of that goal, Defendants took overt acts in furtherance of their common goals and purposes, including the coordinated publication and republication of false and defamatory statements regarding Plaintiff.

41. Defendants knew or should have known that the statements about Plaintiff were false.

42. Defendants' conspiracy to defame Plaintiff have caused, and unless enjoined will continue to cause, Plaintiff to suffer irreparable harm for which he has no adequate remedy at law.

43. Defendants' actions have also caused Plaintiff to suffer damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants as follows:

  A. Awarding Plaintiff compensatory, special, and punitive damages, in amounts to be proven at trial, plus pre-judgment and post-judgment interest;

  B. Awarding Plaintiff its costs associated with this action;

  C. Granting Plaintiff injunctive relief requiring, *inter alia,* that Defendants withdraw the defamatory statements regarding Plaintiff, to publish

retractions, and prohibiting Defendants from publishing or republishing false and defamatory statements regarding Plaintiff in the future; and

D.     Such other and further relief as the Court deems appropriate.

Respectfully submitted,

COZEN O'CONNOR

By:    /s/ Samuel A. Lewis
_____
Samuel A. Lewis / Fla. Bar No. 55360
Email: slewis@cozen.com
COZEN O'CONNOR
Southeast Financial Center, 30th Floor
200 South Biscayne Blvd.
Miami, Florida 33131
Tel: 305-397-0799

***Counsel for Plaintiff***